UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACEY MACK,

    Plaintiff,

                                          Civil No. 07-12361
                                          Hon. John Feikens

    v.

BLUE CROSS/BLUE SHIELD OF
MINNESOTA,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This is a coordination of insurance benefits dispute in which Defendant Blue Cross/Blue Shield (Blue Cross) argues that it is not liable for Plaintiff Stacey Mack's (Mack) insurance coverage because she was covered by AAA auto insurance (AAA). Blue Cross asks for summary judgment based on the contractual language of the policies. For the reasons explained below, I GRANT Defendant's motion for summary judgment.

**II.    FACTUAL BACKGROUND**

The events surrounding this dispute stem from a May 24, 2004 automobile accident in Warren, Michigan. At around 11:30 that evening, a vehicle began chasing Mack's car. The chase ended when the vehicle slammed into Mack's car, forcing it off the road. Mack exited her car and confronted the driver of the other vehicle. The driver then

grabbed Mack by the hair and started punching Mack's face. The driver then left the scene.[1] Mack pressed charges against the driver, Mia Maxwell. Maxwell eventually pleaded guilty to assault and battery on a person.

At the time of the accident, Mack was covered by a no-fault automobile policy from AAA that contained a coordination of medical benefits provision. She also was covered by a Blue Cross health care plan. The AAA policy states the following:

> If the Declaration Certificate shows "COORDINATED MEDICAL BENEFITS," it is agreed that primary medical insurance or health care benefit plans providing coverage for motor vehicle accident injuries are available to you or a resident relative and are your primary sources of protection. If primary protection is available, we will pay benefits for all reasonable charges incurred for reasonably necessary products, services and accommodations for the care, recovery or rehabilitation of you or a resident relative, except to the extent that: (1) benefits are paid or payable under primary protection . . .

The AAA policy includes the required language stating, "COORDINATED MEDICAL BENEFITS INCLUDED."

The Blue Cross policy is a self-funded employee welfare benefit plan provided by Mack's employer. Also, the Blue Cross plan is governed by ERISA. It includes the following coordination of benefits clause:

> Under the coordination of benefits provision of this plan, the amount normally reimbursed under this plan is reduced to take into account payments made by "other plans." When this and another plan both provide health coverage, the order in which the various plans will pay benefits must be established. This will be done as follows using the first rule that applies:

---

[1] The other driver was eventually found by the police. The driver was the wife of the man who was in Mack's car at the time.

>   2. A plan providing benefits or services under no fault automobile insurance and any personal injury protection coverage is always primary.

Mack filed claims under both insurances with the AAA claim coming under the policies Personal Injury Protection (PIP Coverage). Both AAA and Blue Cross denied Mack's claims for benefits, asserting that the other carrier was primary for medical claims. However, Mack presents evidence that Blue Cross paid benefits on June 30, 2004 and July 2, 2004 before Blue Cross stopped paying Mack's medical bills.

## III. STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would affect the application of governing law to the rights and obligations of the parties. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence and any inferences drawn therefrom in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). For a claim to survive summary judgment, the nonmovant must offer more than a mere scintilla of evidence as to the material facts. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The movant's burden is satisfied where there is an absence of evidence to support the nonmovant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

## IV. ANALYSIS

Initially, there is the question of whether AAA's Michigan no-fault automobile coverage applies to this situation. Mack states in her response that her injuries arose from

3

a fight after this accident occurred. This argument would negate the need to look into the contract provisions of the insurance policies.

The only "evidence" to support this new allegation is a statement gleaned from a brief submitted by AAA in a separate, state court proceeding. Upon reviewing that statement, I note several aspects that show that this statement is a bald assertion and not evidence. First, the statement is an assertion made by AAA's attorney in separate, state court proceeding. It has no substantiation but rather is a contention made in a motion for summary disposition in Michigan's Circuit Court for the County of Wayne. Second, the contention is far from conclusive as it states that, "Defendant contends that Plaintiff's claimed neck injury was more likely a result of being punched in the face and neck." This is simply an argumentative statement. There is nothing to substantiate this statement: no medical reports, no affidavit or deposition testimony from Plaintiff, and no ruling from the state court as the matter was settled before the state court ruled on the matter. In other words, these new allegations which come almost three years after the accident are unsupported by evidence. Further, the allegations are contradicted by Mack's own amended complaint in which she states that she was involved in an accident on May 24, 2004 in which she sustained "accidental bodily injuries" including a herniated disk and a strained back. The argument fails as it is supported by mere assertions and lacks any credible evidence upon which this Court could rely. Plaintiff Mack fails to support her argument with any evidence; it is baseless and contradicts Mack's own amended complaint.

**A.     Michigan No-Fault Provisions and Coordination of Benefits Clauses**

With that said, the primary issue in this case is whether Blue Cross is liable for Plaintiff Mack's medical bills that resulted from injuries sustained in this accident. Coordinated coverage in a no-fault setting is governed by MCL § 500.3109a which provides:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

Michigan Courts have interpreted MCL 500.3109a to hold a no-fault insurer secondarily liable for insurance when there is another form of health or accident coverage and both insurers look to escape liability through competing coordination of benefit clauses. Primax Recoveries v. State Farm Mutual Ins., 147 F. Supp.2d 775, 780-81 (E.D. Mich. 2001)(Roberts, J.) (quoting Federak Kemper Ins. v. Health Ins. Administration, 424 Mich. 537, 546 (1986). The point of the law is to eliminate duplicative recovery by the insured from her no-fault provider and other insurance providers. That, in turn, would assist in containing or reducing no-fault and health insurance costs. Id. (quoting Auto Club Ins. Ass'n v. Frederick & Herrud, 443 Mich. 358, 384 (1993).

The requirement is not absolute. Judge Roberts very succinctly states that "[t]he law is clear in Michigan that no fault insurers in Michigan may become secondarily liable for insurance coverage only where there is another form of health care coverage and

where the insurers both seek to escape liability through the use of competing coordination of benefit clauses; and where ERISA does not preempt to make the no-fault carrier primarily liable." Primax Recoveries, 147 F.Supp.2d at 784. The first two points are true in this present case. The crucial question is whether ERISA preempts Michigan law to make the no-fault carrier in our case liable.

### B. The Sixth Circuit and the Federal Kemper Rule

In American Medical Security v. Auto Club Ins. Association of Michigan, 238 F.3d 743, 752 (6th Cir. 2001), the Sixth Circuit articulated this area of the law regarding ERISA and Michigan No-Fault Insurance as the Federal Kemper Rule. The Sixth Circuit teaches that Federal Kemper developed a priority of coverage rule for situations in which a dispute arose between a no-fault insurance policy and an accident victim's other health insurance coverage. The general rule is that the health insurance is the primary coverage. Id. However, before applying the Federal Kemper Rule, the Court must consider whether the health insurance coverage is governed by ERISA and, in turn, whether Michigan no-fault law is preempted under ERISA. Id.

### C. Michigan No-Fault Law is Preempted in this Instance

The clear language of the coordination of benefits clauses shows that they conflict. Consequently, the analysis this Court must undertake is whether MCL 500.3109a is preempted. MCL 500.3109a regulates insurance for the purpose of satisfying ERISA's savings clause. Id. In general, the Michigan law does regulate insurance for the purposes of satisfying ERISA's savings clause. Northern Group Services v. Auto Owners Ins., 833

F.2d 85, 89-90 (6th Cir. 1987). However, the Supreme Court has carved out an exemption to the rule set forth in Northern Group Services. In FMC Corp. v. Holliday, 498 U.S. 52 (1990), the Court distinguished between self-funded plans and insured plans based on ERISA's deemer clause[2], and found that states may regulate insured plans indirectly by regulating the insurer and its contracts. FMC Corp., 498 U.S. at 61. The Court states specifically that "self funded ERISA plans are exempt from state regulation insofar as that regulation relate[s] to the plans. Id.; see also Citizens Ins. Co. of Am. v. Am. Med. Sec. Inc., 92 F.Supp.2d 663, 668-71 (W.D. Mich. 2000) (finding that ERISA's deemer clause prevents a state from deeming an ERISA plan to be an insurance company; however, self-insured ERISA plans preempt state insurance regulation); Progressive Michigan Ins. v. United Wisconsin Life Ins., 84 F.Supp.2d 848, 853 (E.D. Mich. 2000)(Edmunds, J.)(whether Michigan law is preempted by ERISA depends on whether the insurance at issue is self funded or insured; self-funded ERISA plans are preempted from state regulation).

Since the Blue Cross health insurance at issue in this case is a self-funded ERISA plan, it is not under the Federal Kemper rule. Therefore, the Blue Cross coordination of benefits clause preempts the coordination of benefits clause in Mack's AAA policy, which

---

[2] 29 U.S.C. § 1144(b)(2)(A). The deemer clause states as follows:

Neither an employee benefit plan... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

would make AAA the primary coverage for health care in Mack's accident.

Plaintiff Mack's only argument against this conclusion is that self-funded ERISA plans can be held as primary insurers if the ERISA policy does not expressly disavow payment of medical benefits covered under a no-fault policy. <u>Citizens Ins. Co. of America v. MidMichigan Health CommectCare Plan</u>, 449 F3d. 688 (6th Cir. 2007). However, the <u>Citizens</u> case is distinguished from this case because the plans in <u>Citizens</u> did not have conflicting coordination of benefits clauses. <u>Citizens Ins.</u>, 499 F.3d at 491, n2. In our case, the ERISA plan clearly and unambiguous subordinates its coverage to that of the no fault insurance coverage. <u>See</u> <u>Auto Owners Ins. v. Thorn Apple Valley</u>, 31 F.3d 371, 374 (6th Cir. 1994).

Plaintiff Mack makes a second argument based on estoppel because Blue Cross made two payments for health benefits to Mack. Plaintiff argues that she then justifiably relied on Blue Cross to continue paying those benefits as she pursued further medical treatment. Although, equitable estoppel is available in ERISA cases, Plaintiff failed to establish the elements of a claim for equitable estoppel under ERISA. The elements include the following:

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment. <u>Moore v. Lafayette Life Ins. Co.</u>, 458 F.3d 416, 428-29 (6th Cir. 2006).

Moreover, equitable estoppel cannot be applied "for misrepresentations which contradict

unambiguous, written plan terms because their reliance on the subsequent representation would be unreasonable." Id. Here the language of the plan is very clear that Plaintiff's no-fault insurance takes primary responsibility for her injuries resulting for a car accident. As such, her reliance on two payments made to her by Blue Cross would be unreasonable.

## IV. CONCLUSION

As a matter of law, I GRANT Defendant Blue Cross' Motion for Summary Judgment. The terms of its coordination of benefits clause clearly subordinate its coverage to the coverage of other insurers, making the AAA coverage the primary insurer for Mack's injuries. Although Michigan law usually subordinates no-fault coverage to ERISA plans, the exception to that rule occurs when the ERISA plan is self-insured as it is in this instance.

**IT IS SO ORDERED.**

Date: March 19, 2008            s/John Feikens
                                United States District Judge

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on March 19, 2008, by U.S. first class mail or electronic means.

s/Carol Cohron
Case Manager